IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff/Respondent,<br><br>　vs.<br><br>MARSHALL VINCENT LUCAS,<br><br>　　　　Defendant/Movant. | Cause No. CR 22-143-BLG-DLC<br><br><br>ORDER |

　　　　Pending before the Court is a 28 U.S.C. § 2255 Motion to Vacate Judgment and brief in support filed by Marshall Vincent Lucas ("Lucas"). (Docs. 54 & 62.) Lucas, proceeding pro se, challenges the 168-month sentence imposed after he pled guilty to Coercion and Enticement *See e.g.*, Judg., (Doc. 46.) Lucas alleges counsel provided ineffective assistance at sentencing in violation of the Sixth Amendment. (Doc. 62 at 4-6.)

　　**I.　　Preliminary Review**

　　Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court is to review the § 2255 "motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack[.]" Rule 4(b), Rules

Governing Section 2255 Proceedings for the United States District Courts. A district court must summarily dismiss a § 2255 application "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *Id.*  A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases).  But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."  Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II.     Background

On November 23, 2022, a Complaint was filed charging Lucas with Sexual Exploitation of Children.  (Doc. 1.)  An Indictment was subsequently handed down, charging Lucas with Production of Child Pornography (Count 1) and Coercion and Enticement (Count 2).  (Doc. 8.)  On December 27, 2022, Lucas appeared before the Magistrate Judge and pled not guilty to the criminal charges. *See*, Min. (Doc. 11.)  He was released from custody on conditions.  (*Id.*)

On January 30, 2023, Lucas filed a motion to change his plea, (Doc. 18); he subsequently filed a written plea agreement.  (Doc. 21.)  The plea agreement called

for Lucas to plead guilty to Count 2 of the Indictment, with the Government agreeing to move to dismiss Count 1 at the time of sentencing. (*Id*. at 2.) A change of plea hearing was scheduled for February 16, 2023. (Doc. 23.) On February 13, 2023, Lucas filed a motion to vacate the change of plea hearing, indicating he no longer wished to plead guilty. (Doc. 25.) A jury trial was scheduled for March 21, 2023, and a new plea agreement deadline was set for March 10, 2023. (Doc. 27.)

On February 24, 2023, Lucas filed a second motion to change his plea. (Doc. 28.) Lucas indicated his intent to enter a guilty plea pursuant to the agreement that had been previously filed on January 20, 2023. (*Id*.)

On February 28, 2023, a change of plea hearing was held. (Doc. 31.) The Magistrate Judge accepted Lucas's guilty plea to Count 2 of the Indictment. (*Id*.)

A Presentence Investigation Report was prepared. It calculated an advisory guideline range of 168 to 210 months, based upon a total offense level of 35 and a criminal history category of I. (Doc. 48 at 16.) This offense level was arrived at, in part, by applying the cross-reference contained in U.S.S.C. § 2G2.2(c)(1), which is applicable "if the offense involved causing…a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." (*Id*. at 8-9.) This resulted in a base level offense of 32. The offense level was further increased by 6 levels based upon specific offense characteristics, (*id*. at 9),

3

discussed further below. This resulted in an adjusted offense level of 38. This offense level was then decreased by 3 levels for Lucas's acceptance of responsibility, resulting in a total offense level of 35. (*Id.* at 9-10).

Prior to the sentencing hearing, Lucas filed a sentencing memorandum in which he did not object to the calculations contained within Presentence Investigation Report. (Doc. 39.)

At sentencing, Lucas's attorney, Gillian Gosch ("Gosch"), requested that the Court vary downward from the advisory guideline range and impose the mandatory minimum sentence of 120 months. *See*, Sent. Trans. (Doc. 61 at 9-10.) Gosch did not object to the Court's calculation of the guideline range. (*Id.*) Lucas spoke briefly on his own behalf. He did not request a specific sentence, nor did he object to the guideline range. (*Id.* at 11.) The Government requested a custodial term of 168 months, to be followed by not less than five years of supervised release. (*Id.*)

To fulfill the sentencing objectives of 18 U.S.C. § 3553(a), Lucas was sentenced to the Bureau of Prisons, for 168 months, followed by a 10-year period of supervised release. (*Id.* at 13-17.) This sentence represented a low-end sentence of the adjusted advisory guideline range. Judgment was entered on September 5, 2023. (Doc. 46.) An amended judgment, addressing Lucas's restitution obligation, was filed on November 20, 2023. (Doc. 52.)

Lucas waived his right to appeal the sentence, *see* (Doc. 21 at 6-7); he did not file a direct appeal. Lucas timely filed his § 2255 motion on September 3, 2024, 2024. *See*, 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988). He asks that his sentence be vacated and that he be resentenced by applying the correct guideline calculation and range. (Doc. 62 at 6); *see also*, (Doc. 54 at 7.)

### III.  Analysis

The Court has considered Lucas's challenge to the validity of his sentence. For the reasons explained below, the § 2255 motion will be denied and a certificate of appealability will not issue.

**A. Legal Standard**

"A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States […] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979)(*quoting Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). In

contrast, "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F. 2d 970, 973 (9th Cir. 1981).

### B. Ineffective Assistance of Counsel

Lucas claims Gosch was ineffective by failing to investigate whether or not he actually committed a crime and failing to effectively object to the PSR and argue for a lower sentence on his behalf. (Doc. 62 at 4-5); *see also*, (Doc. 54 at 3.)

This claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Lucas must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id*. at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id*. at 694.

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91. "A fair assessment of attorney

performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

Lucas begins his argument by pointing to the change of plea hearing. He states during the proceeding, the element of "sexual intercourse" was contested and that defense counsel lodged an objection on his behalf. (Doc. 62 at 4.) He suggests that although all parties "agreed," the objection did not carry over to the PSR or sentencing and, as a result, his sentence was unjustly enhanced. (*Id*.) He also asserts that statements were not obtained from members of his household and others familiar with the underlying circumstances. (*Id*.) Lucas then seems to argue that had counsel performed an adequate investigation before the plea agreement was signed, there would have been a definitive determination as to whether or not he actually committed an offense under 18 U.S.C. § 2422(b). (*Id*.) Because none of this was done, due to counsel's purported ineffective performance, Lucas argues he was sentenced based upon an incorrect guideline calculation. (*Id*. at 5.)

It appears that Lucas's argument is based primarily upon discussions that occurred during his change of plea hearing. As part of its offer of proof, the Government discussed the elements of Coercion and Enticement, under 18 U.S.C. § 2422(b). It was explained that if the matter proceeded to trial, the Government was prepared to show that Lucas used a cellular phone and the internet to

knowingly persuade, induce, entice, or coerce Jane Doe to either engage in Sexual Intercourse without Consent, in violation of Montana law, and/or production of child pornography, in violation of federal law. *See*, Sent. Trans. (Doc. 60 at 28-9); *see also*, Offer of Proof (Doc. 24.)

The Magistrate Judge asked if the defense had any objections to the offer of proof. Steven Babcock ("Babcock"), another member of Lucas's defense team, took issue with the government's assertion that Lucas had sexual intercourse with Jane Doe. (*Id*. at 29:10-15.) Babcock explained:

> [S]pecifically in regards to Element No. 1, we are going to state as though that [Lucas] denies that he ever had sexual intercourse without consent with the victim in this case, and that's in relation to Element 1 and 2. He will admit for the child pornography. The statute only requires admission of one of the two, obviously, as long as a violation of federal or state law.
>
> So, the facts that we're going to object to in the offer of proof go directly related to the hands-on offense of sexual intercourse without consent. He will admit although that he persuaded the victim in this case in the production of child pornography, but he will deny the hands-on offense. So, we felt as thought that it was important to point that out to the Court as far as the essential elements of the case.

(*Id*. at 25:21-25 to 26:1-9.)

Babcock went on to qualify the representation. He acknowledged that Lucas admitted to law enforcement that he had sexual intercourse with Jane Doe, but after defense counsel assumed representation, Lucas denied these sexual acts occurred. (*Id*. at 29:18-22.) And as set forth above Babcock conceded that it was a

distinction without a difference, however, because the Government could still prove Enticement and Coercion via Lucas's acknowledgment that he produced child pornography. (*Id*. at 30:14-21.) Lucas went on to admit that he used his cell phone to persuade Jane Doe to send him explicit pictures, knowing she was underage. (*Id*. at 31:1-12.) Lucas admitted the photos constituted child pornography and that production of child pornography is a violation of United States law. (*Id*. at 31:13-19.) Lucas acknowledged knowing that Jane Doe was under the age of 18 when the acts occurred. (*Id*. at 31:20-23.)

As a preliminary matter, Lucas does not provide the names of individuals that he believes counsel should have interviewed or what information they would have provided, specifically as it relates to his count of conviction. As the Court understands Lucas's argument, he asserts there was insufficient information to support a finding that he engaged in sexual intercourse with Jane Doe. This lack of specific information, coupled with the fact that Lucas admitted to Coercion or Enticement via his production of child pornography, leaves this Court unable to understand how he alleges he could be innocent of the offense.

Moreover, Lucas admitted to having sexual intercourse with Jane Doe when she was at his house. *See*, PSR (Doc. 48 at 8, ¶ 21.) Lucas stated it was not planned and he was concerned about impregnating her, so after their first encounter he purchased condoms. (*Id*.) Lucas reported that no one else knew about the sex

9

and estimated they had sexual intercourse six times or less. (*Id.*) He acknowledged having sexual intercourse with Jane Doe when she was 15 years old. (*Id.*) By Lucas's own admission, he told no one about these encounters. Thus, it is unclear what investigation he believes Gosch could have performed relative to the sexual intercourse allegation or what useful information she would have gleaned from such investigation.

But even if Lucas had not told law enforcement that he has sexual intercourse with Jane Doe, he admitted at his change of plea hearing to committing an offense under 18 U.S.C. § 2422(b), as it related to producing child pornography. Thus, he cannot fault Gosch for his own acts to which he admitted in open court. Following this same rationale, he cannot shown that Gosch provided objectively unreasonable representation relative to her pretrial investigation. *Strickland*, 466 U.S. at 688. Lucas has not established the first *Strickland* prong of deficient performance as it relates to this claim.

Lucas also does not cite to the specific guideline calculation with which he takes issue. *See generally*, (Doc. 62.) He contends that counsel failed to object to the "factual basis" in the Presentence Investigation Report, but he does not point to a specific guideline calculation or error. (*Id.* at 4-5.) As set forth above, Lucas's Base Offense Level was determined to be a 32. (Doc. 48 at 8-9.) This was based upon the fact Lucas persuaded and engaged in sexually explicit conduct in the form

of Jane Doe masturbating during video calls with the Lucas in which he also masturbated.  (*Id*. at 9.)  Pursuant to 18 U.S.C. § 2256(2)(B) sexually explicit conduct includes masturbation.  Lucas has shown no error in relation to the base level offense calculation, nor has he provided a ground upon which Gosch should have objected.

    The Base Offense Level was then increased by 2 levels, based upon the fact that Jane Doe was fourteen years old when the conduct began.  (*Id*.)(*citing* U.S.S.G. § 2G1.1(b)(1)(B)).  Lucas does not argue or show that this finding was inappropriate or inaccurate.  Similarly, Lucas's Offense Level was increased by another 2 levels because the offense involved the commission of a sexual act or sexual contact.  (*Id*.)(citing § 2G2.1(b)(2)(A)).  As set forth above, Lucas acknowledged engaging in sexual contact with Jane Doe, who was a minor.  A final 2-level increase occurred under § 2G2.1(b)(6)(B), because Lucas utilized a computer to produce the sexually explicit material involved in the underlying offense.  (*Id*.)  Lucas does not present any argument or information to contradict this finding.

    Lucas does not identify what he finds objectionable relative to the Court's calculation of his guideline range or what purported error in the PSR led to this increased guideline range.  For these reasons, it is not possible to discern what exactly Lucas believes Gosch should have objected to during his sentencing

11

hearing. Or put another way, he has not shown that Gosch's performance fell "outside of the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. She did not perform deficiently.

If a movant is unable to make a showing under the first of *Strickland'*s two prongs, this Court need not evaluate the second. *See Siripongs v. Calderon*, 133 F. 3d 732, 737 (9th Cir. 1998)("We have previously held that it is unnecessary to consider the prejudice prong of *Strickland* if the petitioner cannot even establish incompetence under the first prong."). Thus, this Court's analysis of the *Strickland* claim needs go no further.

Lucas has not meaningfully addressed the prejudice prong in his motion or brief in support. It is noteworthy, however, that by virtue of the plea agreement and acceptance of Lucas's guilty plea, the Government dismissed Count 1- Production of Child Pornography. That offense carried a mandatory minimum sentence of 15 years. *See e.g*., (Doc. 8.) Moreover, Lucas received a low-end guideline range sentence. He has not demonstrated a reasonable probability that, but for Gosch's errors, the result of his sentencing hearing would have been different. *See Strickland*, 466 U.S. at 694. He cannot show the requisite prejudice.

In short, Lucas was provided competent representation and was not prejudiced. Accordingly, his § 2255 motion must be denied.

## IV. Certificate of Appealability

A movant may appeal a district court's dismissal of a § 2255 motion only after obtaining a certificate of appealability from the district court or the circuit court.  28 U.S.C. § 2253( c)(1)(B).  "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253( c)(2).  This standard is satisfied if "jurists of reason could disagree with the district court's resolution of the constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(*citing Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Under this standard, the Court concludes that Lucas is not entitled to a certificate of appealability.  No reasonable jurist would find debatable Lucas's failure to demonstrate entitlement to relief on the claims presented in his § 2255 Motion.

Accordingly, IT IS ORDERED:

1. Lucas's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 54) is DENIED and DISMISSED for lack of merit.

2. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Lucas files a Notice of Appeal.

3.  The clerk shall ensure that all pending motions in this case and in CV 24-125-BLG-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Lucas.

DATED this 20th day of February, 2025.

                */s/ Dana L. Christensen*
                Dana L. Christensen
                United States District Court Judge